# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| WARRENTECH AUTOMOTIVE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 07 C 3539 |
| v. | ) | |
| | ) | Consolidated with |
| | ) | |
| HERITAGE WARRANTY INSURANCE | ) | 07 C 6977 |
| RISK RETENTION GROUP, INC., | ) | |
| | ) | |
| Defendant, | ) | Judge George M. Marovich |
| | ) | |
| v. | ) | |
| | ) | |
| WARRENTECH CORPORATION, | ) | |
| WARRENTECH AUTOMOTIVE OF | ) | |
| FLORIDA, INC., VEMECO, INC., | ) | |
| HARRIS G. MILLER and | ) | |
| BUTLER FINANCIAL SOLUTIONS, LLC, | ) | |
| | ) | |
| Third-party defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Warrentech Automotive, Inc. ("Warrentech Automotive") filed a complaint against Heritage Warranty Insurance Risk Retention Group, Inc. ("Heritage"). Heritage, in turn, filed counterclaims against Warrentech Automotive. In addition, Heritage filed a third-party complaint against defendants Warrentech Corp., Warrentech Automotive of Florida, Inc. ("Warrentech of Florida"), Vemeco, Inc. ("Vemeco"), Harris G. Miller ("Miller") and Butler Financial Solutions, LLC ("Butler"). Butler, in turn, filed counterclaims against Heritage. This case has been consolidated with case number 07 C 6977, which is also pending before this Court, and the parties agreed to file all of their claims in this case for ease.

Before the Court are five motions to dismiss. For the reasons set forth below, the Court grants Heritage's motion to dismiss Warrentech Automotive's claims. The Court grants in part and denies in part Warrentech Automotive's motion to dismiss Heritage's counterclaims. The Court grants in part and denies in part Warrentech Corp., Warrentech Automotive of Florida and Vemeco's motion to dismiss Heritage's third-party claims. The Court grants in part and denies in part Butler and Miller's motion to dismiss Heritage's third-party claims. The Court grants in part and denies in part Heritage's motion to dismiss Butler's counterclaims.

## I.     <u>Background</u>

The Court takes as true the allegations in each party's pleadings. Because so many parties have filed claims, not all parties agree on all facts. The Court has taken care to point out facts that are alleged by fewer than all of the parties and bases its rulings on the various motions to dismiss only on the allegations made in the relevant claims.

This case arises out of a series of contracts entered into by the parties. The contracts set out the parties' obligations to one another with respect to the sale of vehicle service contracts to individual car buyers. At bottom, this suit is about who must pay the claims made by individuals who purchased the vehicle service contracts ("VSCs"). A VSC is akin to an extended warranty for an automobile. The automobile-purchaser has the option, when purchasing a car, to enter into an agreement whereby the purchaser pays a premium and the obligor agrees to pay for the cost of certain repairs that become necessary during the time period set out in the VSC.

In this case, the VSCs were developed, marketed and administered by plaintiff Warrentech Automotive and third-party defendants Warrentech Automotive of Florida and

Vemeco.  Third-party defendant Butler is the obligor on the VSCs.  Defendant Heritage insures Butler's obligations under the VSCs.

At least three contracts are relevant to the claims in this case.  The first relevant contract is the standard-form VSC itself.  The VSC says, among other things, "**We** will pay or reimburse **You** for reasonable costs to repair or replace any **Breakdown** of a part listed under **Mechanical Coverage**."  (Emphasis in original.)  The VSC defines "**We**" or "Our" as Butler Financial Solutions, LLC.  The VSCs also say, "**Our** obligations under this Vehicle Service Contract are insured by a policy issued by Heritage Warranty Mutual Insurance Risk Retention Group, Inc. [address omitted] under a motor Vehicle Service Contract reimbursement policy . . .  If a covered claim is not paid within sixty (60) days . . . **You** may file a claim directly with the Insurance Company.  Please call 1-800-543-8801 for instructions."

The second relevant contract is the "Administrative Agreement."  In 2001, many of the parties to this case signed an Administrative Agreement.  The parties who signed the Administrative Agreement as "WARRENTECH" are Warrentech Automotive, Warrentech Automotive of Florida and Vemeco, which (according to Heritage's counterclaim) are all subsidiaries of Warrentech Corp.  Heritage and Butler each signed the Administrative Agreement as "COMPANY".

The Administrative Agreement says, among other things, that "WARRENTECH shall serve as COMPANY's administrator of Vehicle Service Contracts which are provided by COMPANY."  The Administrative Agreement says that Warrentech develops, markets and administers VSCs and that COMPANY wants to retain Warrentech to market and administer VSCs for it.

According to the Administrative Agreement, the VSCs are actually sold by car dealers. For each VSC sold, a car dealer remits to WARRENTECH some amount (presumably slightly less than the dealer collected). WARRENTECH, in turn, remits a "premium" to COMPANY. In addition to the premium, WARRENTECH is supposed to pay COMPANY $40 for each VSC.

In turn, WARRENTECH settles all claims made under the VSCs. The Administrative Agreement says that "WARRENTECH shall maintain a COMPANY funded controlled disbursement claim payment bank account at Bank One located in Texas. This account shall be used solely for loss transactions specified under the AGREEMENT between COMPANY and WARRENTECH." COMPANY is to pay WARRENTECH $20 for each claim, according to the Administrative Agreement.

The third relevant contract is an insurance agreement (the "Insurance Policy") that Heritage and Butler signed in December 2001. Under the policy, Heritage and Butler agreed, among other things:

> [Heritage] will indemnify [Butler] against Loss, subject to the Loss Reserve Fund provision herein, arising out of the reasonable and customary cost of repair or replacement under and in accordance with all the terms of the Service Contracts issued by [Butler] on or after the inception date of this Policy, as follows:
>
> UPON FAILURE OF [BUTLER] TO PERFORM UNDER THE SERVICE CONTRACTS, HERITAGE WARRANTY MUTUAL INSURANCE RISK RETENTION GROUP, INC., SHALL PAY ON BEHALF OF [BUTLER] ANY SUMS [BUTLER] IS LEGALLY OBLIGATED TO PAY OR SHALL PROVIDE THE SERVICE THAT [BUTLER] IS LEGALLY OBLIGATED TO PERFORM ACCORDING TO [BUTLER'S] CONTRACTUAL OBLIGATION UNDER THE SERVICE CONTRACTS ISSUED BY [BUTLER], And HERITAGE WARRANTY MUTUAL INSURANCE RISK RETENTION GROUP, INC. WILL PAY CLAIMS AGAINST THE INSURED FOR RETURN OF THE UNEARNED PURCHASE PRICE OF THE SERVICE CONTRACT.
>
> Coverage hereunder shall be provided on a claims made basis.

> Upon failure of [Butler] to pay or provide service on a valid claim within sixty (60) days after proof of loss has been filed with [Butler], coverage hereunder shall be provided directly to the service contract holder claimant.

(Insurance Policy at 1-2) (emphasis in original). The Insurance Policy also says Heritage's liability is limited to the loss in excess of any "Loss Reserve Fund" that "may be established from time to time by the Administrator on behalf of [Butler]". The Insurance Policy also makes it clear that Heritage approved the content of the VSCs. (Insurance Policy at 5 ("It is a condition of this insurance that the Service Contract(s) issued by [Butler] are identical to the specimen copy(s) on file with and approved by [Heritage] and will remain unaltered unless [Heritage] is duly notified of any proposed alteration and written consent to such proposed alteration is given by [Heritage].")).

Things seem to have gone off the rails at some point in 2006 or 2007. The parties do not agree on what went wrong. They agree, however, that some individuals who purchased VSCs and who have valid claims are not being paid. Additional facts relevant to particular claims are outlined below.

## II.    Standard on a motion to dismiss

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiffs' favor. *McCullah v. Gadert*, 344 F.3d 655, 657 (7th Cir. 2003). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombley*, 127 S.Ct. 1955, 1964 (2007)

(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Bell Atlantic*, 127 S.Ct. at 1964-1965. A complaint must include enough factual allegations to "raise a right to relief above a speculative level." *Bell Atlantic*, 127 S.Ct. at 1965. "After *Bell Atlantic*, it is no longer sufficient for a complaint 'to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (quoting *Equal Employment Opportunity Comm'n v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)).

## III.  Discussion

Court has jurisdiction over this case because the opposing parties on each claim are diverse. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 67 n. 1 (1996). It does not matter that a plaintiff and a third-party defendant are co-citizens, so long as there are no claims between them. *Id.* Here, Warrentech Automotive (a citizen of Texas and Connecticut) sued Heritage (a citizen of South Carolina). Heritage, in turn, sued third-party defendants Warrentech Corp. (a citizen of Texas and Delaware), Vemeco (a citizen of Texas and Delaware), Warrentech Automotive of Florida (a citizen of Texas and Florida), Butler (a citizen of North Carolina and Delaware) and Miller (a citizen of North Carolina). Heritage is diverse with respect to each third-party defendant. Third-party defendant Butler filed a counterclaim against Heritage, with respect to whom it is diverse. The Court has jurisdiction because all of the opposing parties on each claim are diverse, no defendant is a citizen of Illinois and the amount in controversy is greater than $75,000.00. *See* 28 U.S.C. §§ 1332, 1441(b).

**A. Heritage's motion to dismiss Warrentech Automotive's claims**

In its original complaint, Warrentech Automotive asserted nine claims against Heritage. Warrentech alleges that Heritage had promised to obtain reinsurance for its obligations but that by May 2006, Warrentech learned from the reinsurance company that it did not have a policy in effect with Heritage. Warrentech alleges that by December 2006, Heritage told Warrentech that if Butler failed to perform as obligor or if Butler declared bankruptcy, then Heritage would consider Warrentech to be the obligor on the VSCs. By April 2007, according to Warrentech's complaint, Heritage agreed to "resume paying all valid claims" for an interim period, subject to a reservation of rights.

Heritage moves to dismiss four of Warrentech Automotive's claims, including Warrentech Automotive's claims for breach of fiduciary duty, fraudulent misrepresentation, negligent misrepresentation and consumer fraud under the Illinois Consumer Fraud and Deceptive Trade Practices Act.

*1. Negligent misrepresentation*

In Count VI, Warrentech Automotive asserted a claim for negligent misrepresentation against Heritage. Warrentech Automotive alleges that when it signed the Administrative Agreement, Heritage promised to reinsure its obligations under the Insurance Policy. Warrentech Automotive further alleges that Heritage reinsured its obligations for a while but ultimately commuted its reinsurance policy. Heritage moves to dismiss Count VI on the grounds that a plaintiff cannot recover in tort for economic losses caused by innocent misrepresentations. *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 435 N.E.2d 443, 453 (Ill. S. Ct. 1982). Warrentech Automotive concedes the point and agrees to dismiss voluntarily Count VI.

Accordingly, the Court dismisses without prejudice Warrentech Automotive's Count VI against Heritage.[1]

### 2. Consumer Fraud

In Count VIII, Warrentech Automotive asserts that Heritage has violated the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/2. As Heritage correctly points out, a breach of contract cannot support a claim under the Illinois Consumer Fraud and Deceptive Trade Practices Act. *Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899, 901 (7th Cir. 2006) (affirming dismissal of claim where "[t]he 'deception' that [plaintiff] now claims is nothing more than the failure to fulfill that promise . . ."); *Avery v. State Farm Mutual Auto. Ins. Co.*, 216 Ill.2d 100, 835 N.E.2d 801, 844 (Ill. Sup. Ct. 2005). In concluding that a breach of contract is not actionable as consumer fraud, the Illinois Supreme Court explained:

> What plaintiff calls 'consumer fraud' or 'deception' is simply defendants' failure to fulfill their contractual obligations. Were our courts to accept plaintiff's assertion that promises that go unfulfilled are actionable under the Consumer Fraud Act, consumer plaintiffs could convert any suit for breach of contract into a consumer fraud action. . . . We believe that a 'deceptive act or practice' involves more than the mere fact that a defendant promised something and then failed to do it. That type of 'misrepresentation occurs every time a defendant breaches a contract.

---

[1]The Court takes this opportunity to remind the parties of their obligations under Rule 11 of the Federal Rules of Civil Procedure. Warrentech Automotive is not the only party who filed a claim for negligent misrepresentation and promptly agreed to dismiss it after a motion to dismiss was filed. The parties should refrain from causing needless motions by filing claims they know not to be reasonably grounded in the law.

So, too, the parties should take care when filing briefs and other documents with the Court. The Court has already reminded the parties in this case to comply with local rules, including Local Rule 5.2(e). The parties should also take care to cite proper caselaw. Every party misstated at least once the standard on a motion to dismiss. At least one party has, on multiple occasions, cited as the standard on a motion to dismiss the very language from *Conley v. Gibson* that the Supreme Court retired more than a year ago.

-8-

*Avery*, 835 N.E.2d at 844 (citing *Law Offices of William J. Stogsdill v. Cargin Fed. Bank for Savings*, 268 Ill.App.3d 433, 437-38 (Ill. App. Ct. 1995)).

In this case, Warrentech Automotive alleges that Heritage "committed deceptive acts and engaged in deceptive practices by refusing to pay valid claims submitted by VSC holders, misrepresenting the existence of reinsurance on the Heritage policy, and misleading Warrentech in contravention of the terms and conditions of the Heritage Agreements." *See* Warrentech Automotive Complt. at ¶ 86. The flaw in Warrentech Automotive's claim is that everything it alleges as fraud is based on a contractual promise. Tellingly, Warrentech Automotive's claim for breach of contract (Count III) alleges that Heritage breached the Administrative Agreement "by refusing to pay or fund the payment of valid claims," which is the very conduct it now also claims constitutes consumer fraud. Likewise, Heritage's purported obligation to obtain reinsurance stems from a clause in the Administrative Agreement. Finally, Warrentech Automotive explicitly alleges that the misrepresentations are contrary "to the terms and conditions of the Heritage Agreements." By its own allegations, Warrentech Automotive confirms that it seeks nothing beyond enforcement of contractual terms in its consumer fraud claim. Illinois does not recognize such a claim, so Count VIII is dismissed with prejudice.

### 3. *Breach of fiduciary duty*

Next, in Count IV, Warrentech Automotive asserts a claim for breach of fiduciary duty. Under Illinois law, a "fiduciary duty is the duty of an agent to treat his principal with the utmost candor, rectitude, care, loyalty, and good faith–in fact to treat the principal as well as the agent would treat himself." *Lagen v. Balcor Co.*, 274 Ill.App.3d 11, 653 N.E.2d 968, 975 (Ill. App. Ct. 2nd Dist. 1995) (quoting *Burdett v. Miller*, 957 F.2d 1375, 1381 (7th Cir. 1992)). A fiduciary

relationship may also be established "[i]f a person solicits another to trust him in matters in which he represents himself to be expert as well as trust-worthy and the other is not expert and accepts the offer and reposes complete trust in him." *Burdett*, 957 F.2d at 1381. But trust is not enough because one trusts most people with whom one does business. *Lagen*, 653 N.E.2d at 975. The "touchstone of a fiduciary relationship is the presence of a significant degree of dominance and superiority of one party over another." *Lagen*, 653 N.E.2d at 975.

In this case, Warrentech Automotive alleges that, by virtue of the Administrative Agreement, it serves as agent to Heritage. Warrentech Automotive asserts that the principal-agent relationship creates, as a matter of law, a fiduciary duty. Although an agent owes a fiduciary duty to a principal, Warrentech has not cited (and the Court has not found) a single case under Illinois law where a *principal* was found to have a *fiduciary* duty to an agent. The very concept seems counter-intuitive. One would not, for example, conclude that a client owes a fiduciary duty to an attorney or that a beneficiary owes a fiduciary duty to a trustee. The point of fiduciary duty is to protect the trusting party from the dominant party. The Court will not find that the trusting party (here, the principal) owes a fiduciary duty toward the dominant party (here, the agent) without some evidence that an Illinois court would reach such a conclusion. Accordingly, the Count IV is dismissed without prejudice.

### 4. *Fraudulent misrepresentation*

Finally, in Count V, Warrentech Automotive asserts a claim against Heritage for fraudulent misrepresentation. Specifically, Warrentech Automotive alleges that "Heritage made false statements of material fact promising that Heritage's obligation to pay VSC claims would be reinsured and that all valid claims of VSC holders would be satisfied." (Warrentech Complt.

¶ 65).  In its brief, Warrentech Automotive argues that "Heritage's misrepresentations are

evidenced in the language of the Administrative Agreement where Heritage agrees to 'maintain

reinsurance . . .'".  (Warrentech Resp. Brief at 8).  That sentence in Warrentech Automotive's

brief sums up what is wrong with Warrentech Automotive's fraudulent misrepresentation claim:

it alleges merely a breach of contract.

To be actionable under Illinois law, a misrepresentation must be of a fact.  *Prime

Leasing, Inc. v. Kendig*, 332 Ill.App.3d 300, 309 (1st Dist. 2002).  Misrepresentations of the

intent to perform future conduct, by contrast, are not actionable as fraud.  *HPI Health Care

Services, Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 168 (Ill. 1989).  "Even a false promise of

future conduct with no current intent to fulfil that promise will not constitute fraud."  *Prime

Leasing*, 332 Ill.App.3d at 309.  Illinois law recognizes an exception, however, and a false

promise of future performance is actionable if it "is part of a scheme or device to defraud another

of her property."  *Chatham Surgicore, Ltd. v. Health Care Service Corp.*, 356 Ill.App.3d 795,

826 N.E.2d 970, 977 (1st Dist. 2005).  Such promissory fraud "is a disfavored cause of action in

Illinois because fraud is easy to allege and difficult to prove or disprove."  *Bower v. Jones*, 978

F.2d 1004, 1012 (7th Cir. 1992).  The Seventh Circuit has noted:

> In order to survive the pleading stage, a claimant must be able to point to specific,
> objective manifestations of fraudulent intent–a scheme or device.  If he cannot, it
> is in effect presumed that he cannot prove facts at trial entitling him to relief.  If
> the rule were otherwise, anyone with a breach of contract claim could open the
> door to tort damages by alleging that the promises broken were never intended to
> be performed.

*Bower*, 978 F.2d at 1012 (quoting *Hollymatic Corp. v. Holly Systems, Inc.*, 620 F. Supp. 1366,

1369 (N.D. Ill. 1985).

Here, Warrentech Automotive's allegations and brief make it clear that it is trying to make a tort claim out of a breach of contract. Warrentech Automotive is trying to turn Heritage's promise (whether made in writing in the Administrative Agreement or verbally during negotiations therefor) of future conduct (to purchase reinsurance) into a tort. Such a claim does not lie under Illinois law, and Warrentech Automotive does not argue that it comes within the exception to the rule. Accordingly, the Count V of Warrentech Automotive's complaint is dismissed with prejudice.

For these reasons, the Court grants Heritage's motion to dismiss Warrentech Automotive's claims. The Court dismisses without prejudice Counts IV and VI. The Court dismisses with prejudice Counts V and VIII.

### B.    Motions to dismiss Heritage's claims

According to Heritage, the Warrentech entities (by which Heritage means Warrentech Corp., Warrentech Automotive, Warrentech Automotive of Florida and Vemeco) are the ones at the center of the VSC system. Heritage asserts that they have used fraudulently-induced contracts and corporate structures to try to eliminate their own liability under the VSC system. Heritage alleges that when the Warrentech entities first started the programs, it used one of its own subsidiaries as obligor on the VSCs. These days, they find someone else–in this case Butler–to agree to be the obligor on the contracts. Heritage alleges that Warrentech actually *created* Butler as a "special purpose entity" to act as obligor on the VSCs and to isolate the financial risk that the Warrentech entities otherwise would have faced. According to Heritage's complaint, the Securities and Exchange Commission forced Warrentech Corp. to restate its earning for the years 2001, 2002 and 2003 because it was not properly accounting for its

relationship with Butler. According to Heritage, the SEC has forced Warrentech Corp. to recognize Butler's revenues and liabilities as Warrentech Corp.'s own on Warrentech Corp.'s financial statements.

Heritage further alleges that once the Warrentech entities had created Butler and Butler had agreed to act as obligor on the VSCs, Butler needed to prove financial responsibility under various state laws. To do so, Butler needed an insurance policy that either (1) reimburses all sums Butler is legally obligated to pay or (2) reimburses Butler's obligation to the extent Butler fails to perform. Heritage alleges that Butler purchased the second kind, which is cheaper and requires Heritage to pay only if Butler fails to pay. Heritage also alleges that the person (Jeanine Folz) who negotiated Butler's Insurance Policy with Heritage is the *same* person who signed the Administrative Agreement on behalf of the three Warrentech entities who signed the Administrative Agreement.

Heritage also alleges that when it was negotiating the Insurance Policy with Butler, Harris Miller signed an affidavit of solvency on behalf of Butler. Heritage alleges that Miller had served as Butler's President and as Warrentech Corp.'s Chief Financial Officer. Heritage says it learned in 2007 that Miller's affidavit may have been false, because at the time Miller signed it, Butler owed Warrentech $10,000,000.00 on a loan Warrentech had extended so that Butler could avoid bankruptcy.

Based on the alleged conduct, Heritage filed twelve claims. Many of the claims are against multiple parties, and each counter-defendant and third-party defendant has filed a motion to dismiss. Every party seeks to dismiss Heritage's Count IV for fraudulent inducement, Count V for negligent misrepresentation and Count VI for conspiracy. Butler also seeks to dismiss

Count VIII for breach of contract with the intent to defraud. Warrentech Automotive also seeks to dismiss Count XII. Warrentech Corp. seeks to dismiss Counts X and XI.

1. *Fraudulent inducement*

Every party seeks to dismiss Heritage's claim for fraudulent inducement.

As is explained above, misrepresentations of the intent to perform future conduct are not actionable as fraud under Illinois law. *HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 168 (Ill. 1989). "Even a false promise of future conduct with no current intent to fulfil that promise will not constitute fraud." *Prime Leasing*, 332 Ill.App.3d at 309.

Heritage's allegations of fraudulent inducement with respect to Warrentech Corp., Warrentech Automotive, Warrentech Automotive of Florida and Vemeco are all promises of future conduct. For example, Heritage alleges that the Warrentech entities promised that they were capable of administering the VSCs and that they would price the VSCs such that there would not be downside exposure. These are promises of future conduct which can be enforced, if at all, under contract law. The point was confirmed by Heritage, itself, when it argued in its brief that the misrepresentations were made "both by negotiations and in writing in the very text of the Administrative Agreement . . ." (Heritage Brief at 7). Heritage fails to state a claim for fraudulent inducement against Warrentech Corp., Warrentech Automotive, Warrentech Automotive of Florida and Vemeco, and the Court hereby dismisses with prejudice Heritage's Count IV against those defendants.

Heritage's fraudulent inducement claim against Butler and Miller, however, is different. With respect to Butler and Miller, Heritage does not seek merely to use tort law to enforce contractual obligations. Rather, Heritage claims that it was fraudulently induced to enter the

Insurance Policy by a misstatement made by Miller on behalf of Butler. Specifically, Heritage claims that Miller, who worked for Butler, signed an affidavit stating that Butler was solvent. Heritage asserts that when Miller signed the affidavit on Butler's behalf, he knew it to be false. Heritage further asserts that the reason it agreed to enter the Insurance Policy between Heritage and Butler was that it believed, based on Miller's false affidavit, that Butler was solvent. This states a claim for fraudulent inducement.

Although Heritage has alleged sufficient facts against Miller and Butler, Miller and Butler argue that Heritage has gone too far and pleaded itself out of court by attaching to its complaint affidavits that contradict its allegations of fraudulent inducement. They argue that the Court must, on a motion to dismiss, consider as true every statement made in affidavits attached by Heritage to its pleading. The relevant affidavit was signed not by a witness for Heritage but by third-party defendant Miller. Generally, on a motion to dismiss, a court considers only those matters contained in the pleadings, and the pleadings include "a written instrument that is an exhibit to a pleading." *See* Fed. R. Civ. P. 10(c); 12(d). The Seventh Circuit has concluded that an affidavit is a "written instrument" for purposes of Rule 10(c). *Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 453 n. 4 (7th Cir. 1998); *Schnell v. City of Chi.*, 407 F.2d 1084, 1085 (7th Cir. 1969). The Seventh Circuit, however, has also cautioned against "requir[ing] a plaintiff to adopt every word within the exhibits as true for purposes of pleading simply because the documents were attached to the complaint to support an alleged fact." *Northern Ind.*, 163 F.3d at 455. It added:

> A blanket adoption rule makes sense in the context of an attached contract or loan agreement because the contract represents an agreement between two or more parties to which the law binds them. We are not inclined to apply such a rule in

> the case of letters written by the opposition for what could be self-serving
> purposes.

*Northern Ind.*, 163 F.3d at 455.  Ultimately, the Seventh Circuit decided that the statements in

letters written by the defendant and attached to plaintiff's complaint should not be taken as true.

*Northern Ind.*, 163 F.3d at 456 ("a written contract represents an agreement between the parties.

Letters written by the defendant, however, may contain self-serving statements not constrained

by negotiations.  Even though [defendant's] letters include statements in direct opposition to

[plaintiff's] allegations, it would be unwise to accept these unilateral statements as explaining the

entire story at this early point in the litigation.").  Although this case is not quite the same (in that

Heritage attached a sworn affidavit rather than just letters) and although Heritage should have

been more cautious about what it attached to its pleading, the Court heeds the Seventh Circuit's

warning against taking as true one party's statements just because those statements are attached

to the opposing party's pleading (in this case a counterclaim).  Accordingly, the Court will not,

at this time, assume the truth of the assertions made in affidavits that Heritage attached to its

counterclaim and third-party claim.

Finally, Butler argues that Heritage's fraudulent inducement claim must be dismissed

because it is barred by the statute of limitations.  That may ultimately prove true; but, a statute of

limitations bar is an affirmative defense.  *See* Fed. R. Civ. P. 8(c).  A party need not plead around

an affirmative defense.  *Lewis v. City of Chi.*, 528 F.3d 488, 494 (7th Cir. 2008).

Accordingly, the Court denies Butler and Miller's motion to dismiss with respect to

Heritage's Count IV.

### 2.    *Negligent misrepresentation and fraudulent breach of contract*

Like Warrentech Automotive, Heritage filed claims for negligent misrepresentation and promptly agreed to dismiss them once the motions to dismiss flooded in. The Court hereby dismisses without prejudice Count V against Butler, Miller, Warrentech Automotive, Warrentech Automotive of Florida, Vemeco and Warrentech Corporation.

In Count VIII, Heritage asserted a claim for "breach of contract with fraudulent intent" against Butler and Miller. They moved to dismiss on the grounds that such a claim was not actionable under Illinois law. Heritage responded by agreeing to dismiss voluntarily Count VIII. Accordingly, Count VIII is dismissed without prejudice.

### 3. Civil conspiracy

In Count VI, Heritage asserts a claim for civil conspiracy against Butler, Miller, Warrentech Corp., Warrentech Automotive, Warrentech Automotive of Florida and Vemeco. Each party named in Count VI has asked the Court to dismiss the count for failure to state a claim.

Under Illinois law, Heritage must allege: "(1) a conspiracy; (2) an overt act of fraud in furtherance of the conspiracy; and (3) damages to the plaintiff as a result of the fraud." *Bosak v. McDonough*, 192 Ill.App.3d 779, 803, 549 N.E.2d 643, 646 (Ill. App. Ct. 1st Dist. 1989). A conspiracy is an agreement by "two or more persons to accomplish by concerted action an unlawful purpose or a lawful purpose by unlawful means." *Id.* Agreement is a necessary component because innocent performance does not constitute conspiracy. *Borsellino v. Goldman Sachs Group, Ltd.*, 477 F.3d 502, 509 (7th Cir. 2007) (affirming dismissal of civil conspiracy claim under Illinois law where party failed to allege when or by whom the agreement

was made).  The claim must be plead with particularity.  *Borsellino*, 477 F.3d at 509; Fed. R. Civ. P. 9(b).

In its brief, Heritage fails to point to any facts as to who made the agreement or when it was made.  Heritage merely lists 36 paragraphs of its complaint and expects the Court to figure it out.  The Court has poured over the complaint and the closest Heritage comes to alleging an agreement is in ¶ 44, where Heritage alleges that Warrentech Corp.'s chief executive officer knew of Butler's insolvency.  That Warrentech Corp. knew of Butler's insolvency, however, is not evidence that the parties made an agreement to defraud Heritage.

The Court dismisses without prejudice Count VI of Heritage's counterclaim and third-party complaint.

### 4. *Unjust enrichment*

In Count XII, Heritage asserts a claim for unjust enrichment against Warrentech Automotive, Warrentech Automotive of Florida, Vemeco, Warrentech Corp. and Butler. Heritage's theory is that to the extent the Court rescinds the Insurance Policy, Warrentech Automotive, Warrentech Automotive of Florida, Vemeco, Warrentech Corp. and Butler have been unjustly enriched by the actions Heritage took under the Insurance Policy.

Warrentech Corp., Warrentech Automotive, Warrentech Automotive of Florida and Vemeco have moved to dismiss Count XII.  They argue that because Heritage failed to state a claim against them for fraudulent inducement, Heritage cannot prevail on an unjust enrichment theory.  Heritage's unjust enrichment claim, however, is not based on Heritage's having been fraudulently induced to enter the Administrative Agreement.  Rather, it is based on having been

fraudulently induced to enter the Insurance Policy. The Court did not dismiss that claim. Accordingly, it will not dismiss Count XII.

### 5. *Warrentech Corp. and the Administrative Agreement*

Warrentech Corp. seeks to dismiss Counts I, II, III, X and XI of Heritage's third-party complaint against it because those claims are based on the Administrative Agreement, to which it claims not to be a party. While it is true that Warrentech Corp. is not a signatory to the Administrative Agreement, Illinois law allows a court to disregard corporate forms where "(1) there is such a unity of interest and ownership that the separate personalities of the corporations and/or individuals no longer exist; and (2) circumstances are such that adhering to the fiction of a separate corporate existence would promote injustice or inequity." *United States v. All Meat & Poultry Stored at LaGrou Cold Storage*, 470 F. Supp.2d 823, 827-828 (N.D. Ill. 2007) (refusing to dismiss claims against non-signatory where party alleged corporate entities had common ownership, failed to observe corporate formalities and operated as a single entity).

In this case, Heritage has included enough allegations to bring its right to relief above a speculative level and put Warrentech Corp. on notice that it intends to hold it liable by piercing the corporate veil. Among other things, Heritage has alleged that Warrentech Corp.'s Senior Vice President, Jeanine Folz, was also Senior Vice President of Warrentech Automotive, Warrentech Automotive of Florida and Vemeco and that she signed the Administrative Agreement on their behalf. Heritage further alleges that Warrentech Corp. kept all of the records with respect to the Administrative Agreement and interacted with Heritage directly with respect to the Administrative Agreement. Although Heritage may not ultimately prevail on this issue, it has alleged enough to survive a motion to dismiss.

Warrentech Corp.'s motion to dismiss is denied as to Counts I, II, III, X and XI.

**3.     Heritage's motion to dismiss Butler's counterclaims**

Butler filed a number of counterclaims against Heritage, and Heritage has moved to dismiss two of them.

*1.      Consumer fraud*

In Count V, Butler asserts a claim under the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1, et seq. Butler alleges that "[b]etween December 2001 and December 2006, Heritage collected premiums to insure VCSs [sic] under the Heritage Policy that it issued to Butler." Butler further alleges that "[t]he failure by Heritage to fund covered VCS [sic] claims will result in escalating financial exposure to Butler and the refusal of repair facilities to perform repairs or release vehicles for which repairs already have been made. VCS [sic] holders throughout the United States, including Illinois, will be left without the protection that Heritage represented to them they would have when they purchase VCSs [sic]."

As Heritage correctly points out, a breach of contract cannot support a claim under the Illinois Consumer Fraud and Deceptive Trade Practices Act. *Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899, 901 (7th Cir. 2006) (affirming dismissal of claim where "[t]he 'deception' that [plaintiff] now claims is nothing more than the failure to fulfill that promise . . ."); *Avery v. State Farm Mutual Auto. Ins. Co.*, 216 Ill.2d 100, 835 N.E.2d 801, 844 (Ill. Sup. Ct. 2005). In concluding that a breach of contract is not actionable as consumer fraud, the Illinois Supreme Court explained:

> What plaintiff calls 'consumer fraud' or 'deception' is simply defendants' failure
> to fulfill their contractual obligations. Were our courts to accept plaintiff's
> assertion that promises that go unfulfilled are actionable under the Consumer
> Fraud Act, consumer plaintiffs could convert any suit for breach of contract into a

> consumer fraud action. . . . We believe that a 'deceptive act or practice' involves
> more than the mere fact that a defendant promised something and then failed to
> do it. That type of 'misrepresentation occurs every time a defendant breaches a
> contract.

*Avery*, 835 N.E.2d at 844 (citing *Law Offices of William J. Stogsdill v. Cargin Fed. Bank for Savings*, 268 Ill.App.3d 433, 437-38 (Ill. App. Ct. 1995)).

Butler, of course, argues that its claim goes beyond a breach of contract. That is not what it alleged in its complaint, however. Butler's claim boils down to: a) it paid premiums to Heritage and b) Heritage failed to pay, thereby subjecting Butler to damages. This is a contract dispute. Count V of Butler's counterclaim is dismissed with prejudice.

### 2. *Unreasonable and vexatious conduct*

Next, Heritage seeks to dismiss Count VI of Butler's counterclaim. In Count VI, Butler seeks attorneys fees for unreasonable and vexatious conduct.

By statute, Illinois allows a court to award attorneys' fees to an insured where an insurance company has denied a claim or delayed payment on a claim and the insurer's conduct was "vexatious and unreasonable." *See* 215 ILCS 5/155. Thus, the insurer's conduct must be willful and without reasonable cause. *Citizen First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000).

Butler devoted six pages of its oversized brief to defending its claim. Still, Butler failed to point the Court to a single fact in its complaint that might constitute unreasonable or vexatious conduct. Rather, Butler argues that it "alleged the textbook elements of a Section 155 claim in paragraph 127." The Supreme Court, however, has clearly stated that a "formulaic recitation of the elements of a cause of action" will not suffice. *Bell Atlantic*, 127 S.Ct. at 1964-1965. Rather, a complaint must include enough factual allegations to "raise a right to relief above a

speculative level." *Bell Atlantic*, 127 S.Ct. at 1965. Butler also states that it alleged additional facts in "paragraphs 1, 8-9, 23-24, 33-51, 56-58, 64-66, 73-92, and 103-4" and, apparently, expects the Court to devise a claim for it. The Court has poured over the allegations and most of them boil down to: there is an Insurance Policy, Heritage refuses to pay, Butler is not in charge of administering the VSCs, Heritage has the right to change the VSCs and Heritage failed to reinsure its obligations. None of that, even if true, is vexatious and unreasonable.

The closest Butler comes to alleging conduct that is vexatious and unreasonable is in ¶¶ 74 and 75, where Butler alleges that for the first six or so years under the Insurance Policy, Heritage paid every covered VSC claim without regard to Butler's failure to pay claims and without regard to Butler's solvency. Butler alleges that after six or so years, Heritage suddenly stopped paying claims. Butler may not ultimately be able to prove those facts, and those facts may not be enough to establish vexatious and unreasonable conduct. Still, it is enough to bring Butler's claim above a speculative level.

The Court declines to dismiss Count VI of Butler's counterclaim against Heritage. For these reasons, Heritage's motion to dismiss Butler's counterclaim is granted in part and denied in part.

## IV.    Conclusion

For the reasons set forth above, the Court grants Heritage's motion to dismiss Warrentech Automotive's claims. The Court dismisses without prejudice Counts IV and VI of Warrentech Automotive's complaint. The Court dismisses with prejudice Counts V and VIII of Warrentech Automotive's complaint.

The Court grants in part and denies in part Warrentech Automotive's motion to dismiss Heritage's counterclaims. The Court grants in part and denies in part Warrentech Corp., Warrentech Automotive of Florida and Vemeco's motion to dismiss Heritage's third-party claims. The Court grants in part and denies in part Butler and Miller's motion to dismiss Heritage's third-party claims. The Court dismisses with prejudice Count VI of Heritage's amended counterclaim and third-party claim as to Warrentech Automotive, Warrentech Corp., Warrentech Automotive of Florida and Vemeco. The Court dismisses without prejudice Counts V, VI and VIII of Heritage's amended counterclaim and third-party claim.

The Court grants in part and denies in part Heritage's motion to dismiss Butler's counterclaims. The Court dismisses with prejudice Count V of Butler's counterclaim.

Any party wishing to file amendments to any of its claims, counterclaims or third-party claims shall do so on or before October 1, 2008. Before filing an amendment, a party should take care to comply with Rule 11 of the Federal Rules of Civil Procedure.

ENTER:

George M. Marovich
_____
George M. Marovich
United States District Judge

DATED: August 12, 2008